58 CCPA

**Application of Wayne T. BARRETT, Moises G. Sanchez and Milton C. Vanik.**

**Patent Appeal No. 8495.**

United States Court of Customs and Patent Appeals.

May 6, 1971.

Alvin Guttag, attorney of record, William T. Bullinger, Cushman, Darby & Cushman, Washington, D. C., for appellant. Joseph P. Nigon, Clarksville, Md., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred E. McKelvey, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and RE, Judge, United States Customs Court, sitting by designation.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claim 6 in appellants' application serial No. 613,-060, filed January 5, 1967, to reissue patent No. 3,164,554, granted January 5, 1965, on an application which was a continuation-in-part of application serial No. 693,511, filed October 31, 1957. We reverse.

## THE INVENTION

Claim 6 is for a process for producing thoria sol, which is a colloidal solution of thorium dioxide, by electrodialysis of an aqueous solution of thorium salts. According to the specification, the particles of thorium dioxide in the sol prepared by this method may be coated with zirconium and the resultant product used as a breeder "blanket" in nuclear power reactors. Claim 6, with subparagraphing supplied and the language principally in contention emphasized, is as follows:

6. A process for preparing a thoria sol which comprises

preparing an aqueous solution of thorium salts selected from the group consisting of the nitrate, the chloride and the perchlorate,

withdrawing a portion of said solution,

electrodialyzing in the presence of *an anion permeable membrane,* said portion to remove anions and

returning said portion to a [the?] larger body of solution and

continuing said withdrawal electro-dialysis and addition back until said body of solution is essentially free of electrolytes and

recovering the product thoria sol.

## THE REJECTION

Claim 6 has been rejected both under the first paragraph of 35 U.S.C. § 112 as based upon insufficient disclosure of "how to make" (i. e., how to carry out the claimed process) [1] and under 35 U.S.C. § 103 as obvious in view of the disclosure of O'Connor et al., United States patent No. 3,280,011, filed July 18, 1962. However, the dispositive issue in both rejections is whether disclosure which the solicitor concedes is equivalent in the specification of appellants' parent application and in the present application is adequate to support claim 6, since, as the solicitor further concedes,

> If the disclosure of the parent application is adequate, the effective date of the reference is overcome, and of course, the disclosure of the application on appeal would also be adequate.

Claim 6 recites electrodialysis with "an anion permeable membrane." The specifications state generally "Preferred techniques suitable for anion removal are: * * * Electrodialysis using anion permeable membranes" and both contain an "Example I" which recounts the dialysis of 4000 grams of a solution of thorium nitrate in a cell "divided by an ion exchange membrane of Amberplex A1." The examiner held this disclosure inadequate because the ion exchange membrane in Example I was identified only by its trademark designation, and the board affirmed on this ground. The examiner pointed out that appellants had "cited no references which teach any method of preparing * * * [Amberplex A1] or what its formula or chemical composition may be." The board made similar comments, emphasizing that, "as far as the record shows, [Amberplex A1] is a proprietary material whose composition is maintained in secrecy" and that future availability of the material was at the manufacturer's sufferance, and additionally pointed out that the physical characteristics of Amberplex A1, such as thickness and porosity, were not set forth in Example I.

## APPELLANTS' ARGUMENTS

Appellants argue that their general disclosure that their process can be carried out using "anion permeable membranes" is sufficient to support the controverted recitation in claim 6 and that the disclosure in Example I that they had carried out the process using an Amberplex A1 anion permeable membrane was "excess" not necessary to support the claim. Additionally, they argue that, if they must rely on the example, the example is adequate, citing primarily In re Metcalfe, 410 F.2d 1378, 56 C.C.P.A. 1191 (1969). Since we agree with the first argument, we do not reach the second.

## OPINION

The single claim on appeal recites "an anion permeable membrane" without restriction as to type, and appellants' brief stresses that the particular type of membrane used is not critical to the practice of their invention. While the brief for the solicitor argues, in effect, that proper selection of the membrane *is* critical because certain anion permeable membranes might not be operative in the process, there is nothing in the record to suggest that, even if this is so, the selection of an appropriate membrane would not have been within the ordinary skill in this art at the time appellants' parent application was filed. The record discloses that anion permeable membranes *in general* were well known before the filing date of appellants' parent application, although the reference on which appellants rely to describe Amberplex A1 *in particular* was published after their

---

[1]. In his brief, the solicitor, equating Example I with appellants' "best mode," argues that "the parent specification fails to 'set forth the best mode' as required by 35 U.S.C. § 112 in such a clear manner that it would be reasonably understood by a skilled artisan." However, there is no indication in the record that either the examiner or the board intended a "best mode" rejection. Accordingly, we do not deal with the solicitor's arguments in this connection.

filing date.[2]  Compare In re Skrivan, 427 F.2d 801, 806, 57 C.C.P.A. 1201, 1206–1207 (1970); and In re Franck, 255 F.2d 931, 934, 45 C.C.P.A. 975, 978 (1958). If the selection of an appropriate membrane would have been within the ordinary skill in the art at that time, appellants' disclosure is just as sufficient as if the selection criteria were set forth at length in the specification.  Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 437, 22 S.Ct. 698, 46 L.Ed. 968 (1902).  Accordingly, we agree with appellants that the disclosure of Example I, insofar as it indicated that a particular anion permeable membrane had been used in practicing the invention, was "excess" not required by the how-to-make provision of 35 U.S.C. § 112, first paragraph.  Compare In re Robins, 429 F.2d 452, 456–457, 57 C.C.P.A. 1321, 1326 (1970).

The decision of the  board is reversed.

Reversed.

---

2. In view of our disposition of this case on the general disclosure, we do not reach the question, also raised in In re Collier, 427 F.2d 831, 833, 57 C.C.P.A. 1171, 1172 (1970), whether a disclosure providing insufficient support as filed can be made sufficient as of a later date by the subsequent publication of an external reference.